IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHEASTERN DIVISION

| | |
|---|---|
| STATES OF NORTH DAKOTA, ALASKA, ARIZONA, ARKANSAS, COLORADO, IDAHO, MISSOURI, MONTANA, NEBRASKA, NEVADA, SOUTH DAKOTA, and WYOMING; NEW MEXICO ENVIRONMENT DEPARTMENT; and NEW MEXICO STATE ENGINEER, ) ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, ) ) | |
| v. ) ) ) | **Case No. _____** |
| U.S. ENVIRONMENTAL PROTECTION AGENCY; REGINA McCARTHY, in her official capacity as Administrator of the U.S. Environmental Protection Agency; U.S. ARMY CORPS OF ENGINEERS; and JO ELLEN DARCY, in her official capacity as Assistant Secretary of the Army (Civil Works), ) ) ) ) ) ) ) ) ) ) | |
| Defendants. ) | |

_____

**COMPLAINT**
_____

The States of North Dakota, Alaska, Arizona, Arkansas, Colorado, Idaho, Missouri, Montana, Nebraska, Nevada, South Dakota, and Wyoming, and the New Mexico Environment Department and New Mexico State Engineer (collectively "States"), through counsel, allege the following:

1.     This is a civil action for declaratory and injunctive relief brought against the U.S. Environmental Protection Agency ("EPA") and the U.S. Army Corps of Engineers ("Corps") (collectively "Agencies") under the Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq.*

2.     This case involves a challenge to a final rule promulgated by the Agencies under the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.* ("Clean Water Act").  The rule, entitled "Definition of 'Waters of the United States' Under the Clean

Water Act."  80 Fed. Reg. 37,054-37,127 (June 29, 2015) ("Final Rule"), unlawfully expands the Agencies' jurisdiction over state land and water resources beyond the limits established by Congress under the Clean Water Act.  The States therefore seek declaratory and injunctive relief against the Agencies for violations of the Administrative Procedure Act, the Clean Water Act, the National Environmental Policy Act, 42 U.S.C. §§ 4321 *et seq.*, Article I, § 8 of the United States Constitution ("Commerce Clause"), and the Tenth Amendment to the United States Constitution.

## JURISDICTION AND VENUE

3.      The Court has jurisdiction over the subject matter of this action under 5 U.S.C. § 706, 28 U.S.C. §§ 1331, and 28 U.S.C. §§ 2201–2202.  This case is not subject to direct judicial review in the Circuit Court of Appeals under 33 U.S.C. § 1369(b) because the Final Rule does not fall within one of the enumerated provisions in that subsection, nor are actions of the Corps subject to direct review under that provision.  The States will, however, file a protective lawsuit in the Court of Appeals for the Eighth Circuit out of an abundance of caution if jurisdiction is ultimately determined to properly reside with the Circuit Courts.  *See, e.g., Am. Paper Inst. v. U.S. Envtl. Prot. Agency*, 882 F.2d 287, 288 (7th Cir. 1989).

4.      Venue is proper under 28 U.S.C. § 1391(e) because North Dakota resides in this judicial district.

## PARTIES

5.      The States, with the exception of the New Mexico Environment Department and New Mexico State Engineer, are sovereign entities that regulate land use, water quality, and water resources within their borders through duly enacted state laws.  The New Mexico Environment Department and New Mexico State Engineer are executive agencies that regulate land use, water quality, and water resources within New Mexico through duly enacted state laws.  The States are also charged with directly administering certain provisions of the Clean Water Act, *see* 33 U.S.C. §§ 1251 *et seq.*,

2

and, with the exception of Idaho and New Mexico, each has been delegated authority to implement additional programs under 33 U.S.C. § 1342(b).

6.      EPA is an agency of the United States within the meaning of the Administrative Procedure Act.   *See* 5 U.S.C. § 551(1).   EPA is charged with administering certain provisions of the Clean Water Act on behalf of the federal government.  *See* 33 U.S.C. §§ 1251 *et seq.*

7.      Defendant Regina McCarthy is the Administrator of EPA.  Administrator McCarthy signed the Final Rule on May 27, 2015.

8.      The Corps is an agency of the United States within the meaning of the Administrative Procedure Act.   *See* 5 U.S.C. § 551(1).   The Corps is charged with administering certain provisions of the Clean Water Act on behalf of the federal government.  *See* 33 U.S.C. §§ 1251 *et seq.*

9.      Defendant Jo Ellen Darcy is the Assistant Secretary of the Army for Civil Works.  Assistant Secretary Darcy signed the Final Rule on May 27, 2015.

## STATUTORY BACKGROUND

### Clean Water Act

10.      Under the Clean Water Act, Congress granted the Agencies regulatory authority to control discharges of certain pollutants into "navigable waters."   *See* 33 U.S.C. §§ 1311(a), 1342(a), 1344(a), 1362(12).  Congress defined "navigable waters" as "waters of the United States."  *Id.* § 1362(7).

11.      Congress directed that states should retain their sovereign authority over state land and water resources, instructing the Agencies to "recognize, preserve, and protect the primary responsibilities and rights of States . . . to plan the development and use . . . of land and water resources . . . ."  *Id.* § 1251(b).

12.      The Clean Water Act requires anyone seeking to discharge certain material into "waters of the United States" to obtain a permit from either a state or EPA,

3

in the case of pollutants, or a state or the Corps, in the case of dredged or fill material. *Id.* §§ 1311(a), 1342(a), 1344(a), 1362(12).

13.     In most cases, states are the primary administrators of the National Pollutant Discharge Elimination System permitting program under 33 U.S.C. § 1342. *See* EPA, *Specific State Program Status*, available at http://water.epa.gov/polwaste/npdes/basics/upload/State_NPDES_Prog_Auth.pdf (last visited June 28, 2015).  States also have the authority to assume the dredge and fill discharge permitting program under 33 U.S.C. § 1344(g).

14.     Discharging into "waters of the United States" without a permit can subject an individual to civil penalties, including fines up to $37,500 per violation per day, and severe criminal penalties.  33 U.S.C. §§ 1311, 1319, 1365; 74 Fed. Reg. 626, 627 (Jan. 7, 2009).

15.     States must establish Water Quality Standards for each water body meeting the definition of "waters of the United States."  33 U.S.C. § 1313.  Those standards must be periodically reviewed and updated.  *Id.* § 1313(c).

16.     For waters that fail to meet applicable Water Quality Standards, a state must set Total Maximum Daily Loads limiting the amount of pollutants that can be discharged into such waters in order to meet the established standards.  40 C.F.R. § 130.7.  States must implement Total Maximum Daily Loads through water quality management plans and permitting programs.  *Id.*

17.     States are also required to issue certifications for all federally-issued permits to ensure that the proposed discharges comply with state Water Quality Standards.  33 U.S.C. § 1341(a)(1).

**National Environmental Policy Act**

18.     The National Environmental Policy Act requires federal agencies to prepare a detailed Environmental Impact Statement for all "major Federal actions significantly affecting the quality of the human environment."  42 U.S.C. § 4332(2)(C).

19.     An agency may prepare an initial Environmental Assessment to determine whether a federal action qualifies as "major" and therefore must be supported by an Environmental Impact Statement.   In the alternative, the Environmental Assessment may conclude that the action qualifies for a Finding of No Significant Impact.  40 C.F.R. § 1508.9.

20.   A Finding of No Significant Impact is only appropriate if the proposed action will have no significant impact on the human environment.  *Id.* § 1508.13.  If there are questions as to the significance of effects associated with the proposed action, an Environmental Impact Statement is required.

21.   Significance may be determined using one of ten "intensity" factors.  *Id.* § 1508.27(b).  Those factors include, *inter alia*, the degree to which the effects are "highly controversial" or "uncertain;" the degree to which the "action may establish a precedent for future actions with significant effects or represents a decision in principle about a future consideration;" and whether the action threatens a violation of federal law.  *Id.*

22.   The National Environmental Policy Act also requires federal agencies to take a "hard look" at the proposed action's consequences and consider a reasonable range of alternatives to the proposed action.  *Friends of Boundary Waters Wilderness v. Dombeck*, 164 F.3d 1115, 1128 (8th Cir. 1999).

## FACTUAL BACKGROUND

23.     On April 21, 2014, the Agencies published in the Federal Register a proposed rule entitled "Definition of 'Waters of the United States' Under the Clean Water Act."  79 Fed. Reg. 22,188-22,274 (Apr. 21, 2014) ("Proposed Rule").

24.     The Agencies published the Final Rule in the Federal Register on June 29, 2015.  *See* 80 Fed. Reg. 37,054-37,127 (June 29, 2015).

25.     The Corps released its Final Environmental Assessment and Finding of No Significant Impact on May 26, 2015, declaring the Final Rule not significant within the meaning of the National Environmental Policy Act and therefore not subject to the

Environmental Impact Statement requirement.  Corps, *Finding of No Significant Impact, Adoption of the Clean Water Rule: Definition of Waters of the United States*, at 2 (May 26, 2015).  The Corps did not make the Draft Environmental Assessment or Finding of No Significant Impact available to the public or the States during the public comment period on the Proposed Rule.

26.    The Final Rule defines primary waters to include "[a]ll waters which are currently used, were used in the past, or may be susceptible to use in interstate or foreign commerce, including all waters which are subject to the ebb and flow of the tide" as well as "[a]ll interstate waters, including interstate wetlands" and "the territorial seas." 80 Fed. Reg. at 37,104 (to be codified at 33 C.F.R. § 328.3(a)(1)-(3)).[1]

27.    The Final Rule then declares that all intrastate "tributaries" of primary waters are per se jurisdictional waters.  *Id.* (to be codified at 33 C.F.R. § 328.3(a)(5)).

28.    The Final Rule defines "tributary" as "a water that contributes flow, either directly or through another water" to a primary water and "is characterized by the presence of the physical indicators of a bed and banks and an ordinary high water mark."  *Id.* at 37,105 (to be codified at 33 C.F.R. § 328.3(c)(3)).  A water is defined as a tributary even if it has man-made or natural breaks, "so long as a bed and banks and an ordinary high water mark can be identified upstream of the break."  *Id.* at 37,106 (to be codified at 33 C.F.R. § 328.3(c)(3)).

29.    "Ordinary high water mark" is defined as "that line on the shore established by the fluctuations of water and indicated by physical characteristics such as a clear, natural line impressed on the bank, shelving, changes in the character of soil, destruction of terrestrial vegetation, the presence of litter and debris, or other appropriate means."  *Id.* at 37,106 (to be codified at 33 C.F.R. § 328.3(c)(6)).

---

[1] The Final Rule codifies changes to the definition of "waters of the United States" in multiple locations throughout the Code of Federal Regulations.  For ease of reference, this Complaint refers to the first location identified in the Final Rule – changes to 33 C.F.R. Part 328.  *See* 80 Fed. Reg. at 37,104-37,106.

30.     The Final Rule's definition of tributary sweeps within the Agencies' authority ephemeral streams and channels that are usually dry.

31.     The Final Rule then declares that all intrastate waters "adjacent" to primary waters, impoundments, or tributaries are per se jurisdictional under the Clean Water Act and subject to the Agencies' regulatory authority.  *Id.* at 37,104 (to be codified at 33 C.F.R. § 328.3(a)(6)).

32.     "Adjacent waters" are waters "bordering, contiguous, or neighboring" primary waters, impoundments, or tributaries.  *Id.* at 37,105 (to be codified at 33 C.F.R. § 328.3(c)(1)).  The category includes "waters separated by constructed dikes or barriers, natural river berms, beach dunes, and the like."  *Id.*  It includes wetlands within or abutting the ordinary high water mark of an open water, such as a pond or lake.  *Id.*

33.     Neighboring includes "[a]ll waters [at least partially] located within 100 feet of the ordinary high water mark of a" primary water, impoundment, or tributary.  *Id.* at 37,105 (to be codified at 33 C.F.R. § 328.3(c)(2)(i)).  It also includes "[a]ll waters [at least partially] located within the 100-year floodplain of a" primary water, impoundment, or tributary "and not more than 1,500 feet from the ordinary high water mark of such water."  *Id.* (to be codified at 33 C.F.R. § 328.3(c)(2)(ii)).  It also includes "[a]ll waters [at least partially] located within 1,500 feet of the high tide line."  *Id.* (to be codified at 33 C.F.R. § 328.3(c)(2)(iii)).

34.     Under these definitions, the Final Rule extends per se jurisdiction to a large variety of waters within floodplains, including lands that are dry most of the year, by virtue of their adjacency to primary waters, impoundments, or tributaries.

35.      The Final Rule also defines primary waters to include any interstate waters and wetlands, including non-navigable interstate waters.  *See id.* at 37,104 (to be codified at 33 C.F.R. § 328.3(a)(2)).  As stated above, the Final Rule establishes per se jurisdiction over waters adjacent to primary waters, *id.* (to be codified at 33 C.F.R. § 328.3(a)(6)), and as explained below, creates jurisdiction on a case-by-case basis for

waters with a "significant nexus" to primary waters.  *Id.* at 37,104-37,105 (to be codified at 33 C.F.R. §§ 328.3(a)(7) and (8)).  Accordingly, under the Final Rule, a completely intrastate water can fall within the Agencies' jurisdictional reach simply because of its relationship to a non-navigable interstate water.

36.    The Final Rule also permits the Agencies to exercise authority on a case-by-case basis over a water not covered by any other part of the Rule—i.e., not already included in a per se category—that, alone or in combination with other waters have a "significant nexus" to a primary water.  *Id.* at 37,104-37,105 (to be codified at 33 C.F.R. §§ 328.3(a)(7) and (8)).

37.    The Final Rule includes within federal jurisdiction, on a case-by-case basis, "[a]ll waters [at least partially] located within the 100-year floodplain of a" primary water that have a significant nexus with a primary water.  *Id.* at 37,105 (to be codified at 33 C.F.R. §§ 328.3(a)(8)).  It further includes, on a case-by-case basis, "all waters [at least partially] located within 4,000 feet of the high tide line or ordinary high water mark of a" primary water, impoundment, or tributary that have a significant nexus to a primary water.  *Id.*

38.    The case-by-case test the Agencies will apply under the Final Rule is whether waters alone or in combination with "similarly situated waters in the region . . . significantly affect[] the chemical, physical, or biological integrity" of a primary water.  *Id.* at 37,106 (to be codified at 33 C.F.R. § 328.3(c)(5)).  "Region" is defined as "the watershed that drains to the nearest [primary water]."  *Id.*  The Final Rule then defines "significant nexus" as "significantly affect[ing] the chemical, physical, or biological integrity" of a primary water.  *Id.*

39.    The Final Rule will harm the States in their capacity as owners and regulators of the waters and lands within their respective boundaries.  The States' use and management of the waters and lands they own or regulate will be subject to greater federal regulation under the Final Rule.

40.     The States fall squarely within the Clean Water Act's zone of interest, given that Congress specifically instructed the Agencies to "recognize, preserve, and protect the primary responsibilities and rights of States . . . to plan the development and use . . . of land and water resources."  33 U.S.C. § 1251(b).  By promulgating the Final Rule, the Agencies violated this statutory protection of the States' authorities.

41.     The Final Rule has an immediate and significant effect on the States' administration of their respective Water Quality Standard development and monitoring programs.  *See id.* § 1313.  The scope of waters subject to standard development, monitoring, and reporting will significantly increase as a result of the Final Rule, requiring the expenditure and commitment of additional state resources.

42.     The Final Rule has an immediate and significant effect on the States' administration of the National Pollutant Discharge Elimination System permitting program.  *See id.* § 1342.  The States with delegated program authority will receive additional National Pollutant Discharge Elimination System permit applications for discharging pollutants into waters now federally regulated as a result of the Final Rule, requiring the expenditure and commitment of additional state resources.

43.     The Final Rule has an immediate and significant effect on the States' administration of the Section 401 certification program.  *See id.* § 1341.  The States will receive additional Water Quality Standard certification requests for federally-issued permits, including those under the Section 404 dredge and fill program, requiring the expenditure and commitment of additional state resources.

44.     Despite the immediate and significant effects on state sovereign authority, the Agencies failed to meaningfully consult with the states during the development of the Proposed and Final Rule in violation of Executive Order 13,132 (Aug. 4, 1999).  The failure to consult also violated cooperative federalism principles enshrined in the Clean Water Act.  *See* 33 U.S.C. § 1251(b) ("It is the policy of the Congress to . . . protect the

. . . rights of States . . . to consult with the Administrator in the exercise of [her] authority under" the Clean Water Act.).

45.     In failing to consult with the states, the Agencies did not take into account the unique ecological, geological, and hydrological differences amongst all states and have ignored the scientific expertise of the state regulators charged with protecting state resources under both federal and state law.  In fact, several of the States have unique hydrological features that no other areas of the country enjoy, including, for example, the extensive prairie pothole regions in North Dakota, South Dakota, and Montana that are now, for the first time, identified as jurisdictional in the Final Rule.  *See* 80 Fed. Reg. at 37,105 (to be codified at 33 C.F.R. § 328.3(a)(7)(i)).  The Agencies also failed to consider the economic impact of the Final Rule on state programs and budgets.

46.     The Final Rule's displacement of state authority over water quality and related land and water resources imposes harm upon the States, which can be remedied by an order from this Court.

**CLAIMS FOR RELIEF**

**I.     The Final Rule Exceeds the Agencies' Authority
Under the Clean Water Act**

47.     Paragraphs 1-46 are re-alleged and incorporated by reference.

48.     The Administrative Procedure Act requires an agency action to be set aside if it exceeds statutory authority or is found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A), (C).

49.     The Clean Water Act only authorizes the Agencies to assert jurisdiction over "navigable waters," defined as "waters of the United States."   33 U.S.C. §§ 1311(a), 1342(a), 1344(a), 1362(7), (12).

50.     The Final Rule defines "waters of the United States" in a way that exceeds the Agencies' statutory authority by asserting, *inter alia*, that: (1) all waters that fall within the Rule's definition of "tributary" are per se jurisdictional; (2) all waters that fall

within the Rule's definition of "adjacent waters" are per se jurisdictional; (3) purely intrastate waters and related features can fall within the Agencies' jurisdictional authority based solely on their relationship with non-navigable interstate waters; and (4) waters alone or in combination with "similarly situated waters" that have a "significant nexus" to a primary water or significantly affect the chemical, physical, or biological integrity of a primary water are within the Agencies' jurisdictional authority.

51.     These categories of waters exceed the jurisdictional tests established by the Supreme Court in *Rapanos v. United States*, 547 U.S. 715 (2006).  The Final Rule also exceeds the jurisdictional limitations articulated by the Supreme Court in *Solid Waste Agency of N. Cook Cnty. v. U.S. Army Corps of Eng'rs,* 531 U.S. 159, 172 (2001).

52.     The Final Rule must be set aside because it exceeds the Agencies' statutory authority under the Clean Water Act and is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A), (C).

**II.     The Final Rule Improperly Extends the Agencies' Authority Beyond the Limits of the Commerce Clause**

53.     Paragraphs 1-52 are re-alleged and incorporated by reference.

54.     The Constitution grants to Congress the power "to regulate commerce with foreign nations, and among the several states."  U.S. Const. art. I, § 8.

55.     Courts are not to "lightly assume that Congress intended to infringe constitutionally protected liberties or usurp power constitutionally forbidden it."  *Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568, 575 (1988).  An agency interpretation of a statute that would cause the statute to extend to the outer limits of Congress' constitutional authority is impermissible unless Congress clearly expressed such an intention.  *Id.*

56.     Congress did not invoke the outer bounds of its authority when it enacted the Clean Water Act.  *See Solid Waste Agency of N. Cook Cnty. v. U.S. Army Corps of*

*Eng'rs*, 531 U.S. 159, 172 (2001).  Any interpretation of the Clean Water Act that goes to the outer bounds of that authority—or beyond—is unlawful under the Act.  *Id.*

57.     The Final Rule would improperly extend Congressional authority beyond the limits of the Commerce Clause insofar as: (1) all waters that fall within the Rule's definition of "tributary" are per se jurisdictional; (2) all waters that fall within the Rule's definition of "adjacent waters" are per se jurisdictional; (3) purely intrastate waters and related features can fall within the Agencies' jurisdictional authority based solely on their relationship with non-navigable interstate waters; and (4) waters alone or in combination with "similarly situated waters" that have a "significant nexus" to a primary water or significantly affect the chemical, physical, or biological integrity of a primary water are within the Agencies' jurisdictional authority.

58.     Because the Final Rule would improperly extend Congressional authority beyond the limits of the Commerce Clause, the Rule is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).

### III.     The Final Rule Violates State Sovereignty Reserved Under the Tenth Amendment

59.     Paragraphs 1-58 are re-alleged and incorporated by reference.

60.     The Tenth Amendment provides that "[t]he powers not delegated to the United States by the Constitution . . . are reserved to the States respectively, or to the people."  U.S. Const. amend. X.

61.     Among the rights and powers reserved to the States under the Tenth Amendment is the authority to regulate intrastate land use and water resources.  *See Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30, 44 (1994) ("regulation of land use, [is] a function traditionally performed by local governments").

62.     Congress recognized these inherent principles when enacting the Clean Water Act and instructed the Agencies to "recognize, preserve, and protect the primary

responsibilities and rights of States . . . to plan the development and use . . . of land and water resources . . . ."  33 U.S.C. § 1251(b).

63.    The Final Rule's assertion of jurisdiction violates the States' sovereignty reserved under the Tenth Amendment insofar as: (1) all waters that fall within the Rule's definition of "tributary" are per se jurisdictional and will always fall under federal, not state, authority; (2) all waters that fall within the Rule's definition of "adjacent waters" are per se jurisdictional and will always fall under federal, not state, authority; (3) purely intrastate waters and related features can fall under federal, not state, authority based solely on their relationship with non-navigable interstate waters; and (4) waters alone or in combination with "similarly situated waters" that have a "significant nexus" to a primary water or significantly affect the chemical, physical, or biological integrity of a primary water will fall under federal, not state, authority.

64.    Because the Final Rule violates the States' sovereignty reserved under the Tenth Amendment, the Rule is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).

### IV.    The Corps Violated the Procedural Mandates of the National Environmental Policy Act

65.    Paragraphs 1-64 are re-alleged and incorporated by reference.

66.    The National Environmental Policy Act requires federal agencies to prepare Environmental Impact Statements for all "major Federal actions significantly affecting the quality of the human environment."  42 U.S.C. § 4332(2)(C).

67.    The Corps was subject to the procedural mandates of the National Environmental Policy Act when promulgating the Final Rule.

68.    The Corps' decision to forgo preparation of an Environmental Impact Statement in favor of an Environmental Assessment and Finding of No Significant Impact violates the National Environmental Policy Act because the Final Rule is a "major Federal action" subject to 42 U.S.C. § 4332(2)(C).   Despite repeated public

pronouncements by EPA and Corps officials to the contrary, the Corps admits in its Finding of No Significant Impact that federal jurisdiction under the Final Rule will expand between 2.8 and 4.6 percent as compared to historical determinations of jurisdiction, an estimate that may grossly understate the impact of the Rule.  *See* Corps, *Finding of No Significant Impact, Adoption of the Clean Water Rule: Definition of Waters of the United States*, at 2 (May 26, 2015).  The Final Rule is highly controversial, as evidenced by approximately 35 states formally opposing the Proposed Rule during the public comment period, and its jurisdictional overreach will create precedent for future actions. The Corps failed to appropriately consider the additional regulatory and economic burdens placed on states and regulated entities and has not fully analyzed the true effects on the human environment.  The Corps also failed to consider a reasonable range of alternatives to the proposed federal action, failed to take a hard look at the projected effects of the Final Rule, and failed to ensure sufficient public participation in the National Environmental Policy Act process.

69.    The Corps' action violates the National Environmental Policy Act and should be set aside as "arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  The Final Rule was also not adopted in "observance of procedure required by law."  *Id.* § 706(2)(D).

### V.    The Final Rule is Arbitrary and Capricious in Violation of the Administrative Procedure Act

70.    Paragraphs 1-69 are re-alleged and incorporated by reference.

71.    The Agencies' decisions in support of the Final Rule must be based on the evidence before the agency and rationally connected to the facts found.  *Anderson v. U.S. Dep't of Transp.*, 213 F.3d 422, 423 (8th Cir. 2000).  The Agencies must provide reasonable and satisfactory explanations for the decisions that were made.

72.    The Final Rule is arbitrary and capricious because it asserts per se jurisdiction over all waters that fall within the Rule's definition of "tributary" and "adjacent

waters."  The Final Rule is also arbitrary and capricious because it asserts jurisdiction over purely intrastate waters and related features based solely on their relationship with non-navigable interstate waters, and waters alone or in combination with "similarly situated waters" that have a "significant nexus" to a primary water or significantly affect the chemical, physical, or biological integrity of a primary water.  Each of these jurisdictional tests are arbitrary and capricious because the evidence in the record does not support them.

73.     The Final Rule is also arbitrary and capricious because it relies on definitions and concepts that lack sufficient clarity to meaningfully guide the States and potentially regulated parties in determining whether waters fall within federal jurisdiction. For example, the Agencies' intend to establish jurisdiction for "adjacent" waters by reference to 100-year floodplains, but admit that existing information on the location of 100-year floodplains may be unreliable and that many portions of the country have not been mapped to clearly identify 100-year floodplain locations.  *See* 80 Fed. Reg. at 37,081.

74.     For these reasons, the Final Rule is "arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).

### VI.    The Agencies Violated the Procedural Requirements of the Administrative Procedure Act

75.     Paragraphs 1-74 are re-alleged and incorporated by reference.

76.     Before an agency may finalize a rule, it must provide the public with a meaningful opportunity to participate in the rulemaking process, including an opportunity to submit comments on the proposed rule and the information supporting the rule through the submission of written data, views, and arguments.  5 U.S.C. § 553.

77.     A final rule must be set aside if it was promulgated "without observance of procedure required by law."  5 U.S.C. § 706(2)(D).

78.    If a final rule is not the "logical outgrowth" of the proposed rule, the rule is invalid for a failure to provide adequate notice and opportunity to comment.  *See*, *e.g.*, *Daimler Trucks N. America LLC v. U.S. Envtl. Prot. Agency*, 737 F.3d 95, 100 (D.C. Cir. 2013).

79.    The Final Rule does not satisfy the logical outgrowth doctrine because the Proposed Rule, for example, did not give interested parties sufficient notice with respect to the final definitions of "adjacent" and "neighboring" waters, "tributaries," and the factors that will be considered in a "significant nexus" analysis.  Nor did the Agencies give sufficient notice regarding the inclusion of additional waters on a case-by-case basis or the mechanisms by which the Agencies would establish jurisdiction over those waters.  Interested parties could not have anticipated the new jurisdictional categories or processes for evaluating jurisdiction, and therefore could not have reasonably commented on those new provisions in the Final Rule during the notice and comment period on the Proposed Rule.

80.    For example, the Proposed Rule defined adjacency based on the location of waters within the riparian area or floodplain, or a hydrologic connection with a primary water, impoundment, or tributary.  *See* 79 Fed. Reg. 22,188, 22,269 (Apr. 21, 2014).  By contrast, the Final Rule includes waters: (1) within 100 feet of a primary water, impoundment, or tributary; (2) within the 100-year floodplain and within 1,500 feet of the ordinary high water mark of a primary water, impoundment, or tributary; or (3) within 1,500 feet of the high tide line.  80 Fed. Reg. at 37,104-37,105 (to be codified at 33 C.F.R. §§ 328.3(a)(6), 328.3(c)(1) and (2)).  The Proposed Rule also included all waters on a case-by-case basis that have a significant nexus to a primary water.  79 Fed. Reg. 22,188, 22,269 (Apr. 21, 2014).  By contrast, the Final Rule includes waters within the 100-year floodplain of a primary water; within 4,000 feet of the high tide line or ordinary high water mark of a primary water, impoundment, or tributary; or within certain water categories that have a significant nexus to a primary water.  80 Fed. Reg. at 37,105 (to

be codified at 33 C.F.R. § 328.3(a)(8)). The Proposed Rule did not give adequate notice to the public of the Final Rule's inclusion of these waters within the Agencies' jurisdiction or the scientific or distance-based thresholds the Agencies would use to assert jurisdiction over those waters, including, for example, the reliance on models and related methods in the Final Rule to establish "ordinary high water marks" in lieu of physical observations as contemplated under the Proposed Rule.

81. The Agencies also violated the procedural requirements of the Administrative Procedure Act because they did not make available to the public during the comment period on the Proposed Rule all of the information relied on in developing the Proposed Rule, including, for example, information relating to the Agencies' connectivity analysis, information supporting the Agencies' analysis of the application of the Proposed Rule to jurisdictional determinations, and information supporting the Corps' environmental effects analysis under the National Environmental Policy Act.

82. In addition, the Final Rule violates the procedural mandates of the Administrative Procedure Act because the Agencies failed to appropriately respond to comments submitted during the comment period and have not appropriately addressed the legal, technical, and economic concerns that were raised by the States and other interested stakeholders in the Final Rule.

83. The Final Rule should be set aside under 5 U.S.C. § 706(2)(A) and (D).

**PRAYER FOR RELIEF**

WHEREFORE, the States of North Dakota, Alaska, Arizona, Arkansas, Colorado, Idaho, Missouri, Montana, Nebraska, Nevada, South Dakota, and Wyoming, and the New Mexico Environment Department and New Mexico State Engineer request the Court to enter judgment in their favor and issue an order:

A. Declaring that the Final Rule is unlawful because it: (1) was issued in violation of the Clean Water Act, the National Environmental Policy Act, and the Administrative Procedure Act; (2) extends Congressional authority beyond the limits of

17

the Commerce Clause; (3) and interferes with state sovereignty in violation of the Tenth Amendment;

B.      Vacating and setting aside the Final Rule in its entirety;

C.      Issuing injunctive relief prohibiting the Agencies from using, applying, implementing, enforcing, or otherwise proceeding on the basis of the Final Rule;

D.      Remanding the matter to the Agencies with instruction to issue a rule that complies with the Constitution, the statutory limits of the Clean Water Act, and the procedural mandates of the National Environmental Policy Act and the Administrative Procedure Act;

E.      Awarding the States costs and attorneys' fees; and

F.      Granting the States such additional relief as may be necessary and appropriate or as the Court deems just and proper.

Dated this 29th day of June, 2015.

Respectfully submitted,

**STATE OF NORTH DAKOTA**
**WAYNE STENEHJEM**
**ATTORNEY GENERAL**

/s/ Wayne Stenehjem
Attorney General
ND State Bar ID No. 03442
Jennifer L. Verleger
Assistant Attorney General
ND State Bar ID No. 06732
Margaret I. Olson
Assistant Attorney General
ND State Bar ID No.06352
Office of Attorney General
500 North 9th Street
Bismarck, ND 58501-4509
Telephone: (701) 328-3640
Facsimile: (701) 328-4300
Email: wstenehjem@nd.gov
        jverleger@nd.gov
        maiolson@nd.gov

**Attorneys for Plaintiff State of North Dakota.**

**STATE OF ALASKA**
**CRAIG W. RICHARDS**
**ATTORNEY GENERAL**

/s/ Ruth Hamilton Heese
Ruth Hamilton Heese*
Senior Assistant Attorney General
123 Fourth Street
P.O. Box 110300
Juneau, AK 99811-0300
Telephone: (907) 465-4117
Facsimile: (907) 465-2520
Email: ruth.hamilton.heese@alaska.gov

Attorneys for Plaintiff State of Alaska.

**STATE OF ARIZONA**
**MARK BRNOVICH**
**ATTORNEY GENERAL**

/s/ John R. Lopez IV
John R. Lopez IV*
Solicitor General
Office of the Arizona Attorney General
1275 W. Washington St.
Phoenix, AZ 85007
Telephone: (602) 542-8986
Facsimile: (602) 542-8308
Email: John.Lopez@azag.gov

Attorneys for Plaintiff State of Arizona.

**STATE OF ARKANSAS**
**LESLIE RUTLEDGE**
**ATTORNEY GENERAL**

/s/ Jamie L. Ewing
Jamie L. Ewing*
Assistant Attorney General
323 Center Street, Ste 200
Little Rock, AR 72201
Telephone: (501) 682-5310
Facsimile: (501) 682-3895
Email: jamie.ewing@arkansasag.gov

Attorneys for Plaintiff State of Arkansas.

**STATE OF COLORADO**
**CYNTHIA H. COFFMAN**
**ATTORNEY GENERAL**

/s/ Frederick R. Yarger
Frederick R. Yarger*
Solicitor General
Colorado Attorney General's Office
1300 Broadway, 10th Floor
Denver, Colorado 80203
Telephone: (720) 508-6168
Email: fred.yarger@state.co.us

Attorneys for Plaintiff State of Colorado.

**STATE OF IDAHO**
**LAWRENCE G. WASDEN**
**ATTORNEY GENERAL**

/s/ Douglas M. Conde
Douglas M. Conde*
Deputy Attorney General
Office of the Attorney General
Department of Environmental Quality
1410 N. Hilton, 2nd Floor
Boise, ID 83706
Telephone:  (208) 373-0494
Facsimile: (208) 373-0481
Email: douglas.conde@deq.idaho.gov

Attorneys for Plaintiff State of Idaho.

**STATE OF MISSOURI**
**CHRIS KOSTER**
**ATTORNEY GENERAL**

/s/ J. Andrew Hirth
J. Andrew Hirth*
Deputy General Counsel
PO Box 899
Jefferson City, MO 65102
Telephone:  (573) 751-0818
Facsimile: (573) 751-0774
Email: andy.hirth@ago.mo.gov

Attorneys for Plaintiff State of Missouri.

**STATE OF MONTANA**
**TIM FOX**
**ATTORNEY GENERAL**

/s/ Alan Joscelyn
Alan Joscelyn*
Chief Deputy Attorney General
215 North Sanders
PO Box 201401
Helena, MT 59620-1401
Telephone: (406) 444-3442
Facsimile: (406) 444-3549
Email: AlanJoscelyn@mt.gov

Attorneys for Plaintiff State of Montana.

**STATE OF NEBRASKA**
**DOUGLAS J. PETERSON**
**ATTORNEY GENERAL**

/s/ Justin D. Lavene
Justin D. Lavene
Assistant Attorney General
Dave Bydalek
Deputy Attorney General
2115 State Capitol Building
PO Box 98920
Lincoln, NE 68509-8920
Telephone:  (402)  471-2682
Facsimile: (402) 471-3297
Email: justin.lavene@nebraska.gov

Attorneys for Plaintiff State of Nebraska.

**STATE OF NEVADA**
**ADAM PAUL LAXALT**
**ATTORNEY GENERAL**

/s/ Lawrence VanDyke
Lawrence VanDyke*
Solicitor General
Office of the Attorney General
100 N. Carson Street
Carson City, NV  89701
Telephone:  (775) 684-1100
Email:  LVanDyke@ag.nv.gov

Attorneys for Plaintiff State of Nevada.

**STATE OF SOUTH DAKOTA**
**MARTY J. JACKLEY**
**ATTORNEY GENERAL**

/s/ Charles D. McGuigan
Charles McGuigan
Chief Deputy Attorney General
Office of the Attorney General
1302 E. Highway 14, Suite 1
Pierre, SD 57501-8501
Telephone: (605) 773-3215
Facsimile: (605) 773-4106
Email: Charles.McGuigan@state.sd.us

Attorneys for Plaintiff State of South Dakota.

**STATE OF WYOMING**
**PETER K. MICHAEL**
**ATTORNEY GENERAL**

/s/ Peter K. Michael
Peter K. Michael
Attorney General
James Kaste
Deputy Attorney General
David Ross
Senior Assistant Attorney General
Wyoming Attorney General's Office
123 State Capitol
Cheyenne, WY 82002
Telephone: (307) 777-6946
Facsimile: (307) 777-3542
Email: peter.michael@wyo.gov
          james.kaste@wyo.gov
          dave.ross@wyo.gov

Attorneys for Plaintiff State of Wyoming.

**NEW MEXICO ENVIRONMENT DEPARTMENT**

/s/ Jeffrey M. Kendall
Jeffrey M. Kendall*
General Counsel
Kay R. Bonza*
Assistant General Counsel
1190 St. Francis Drive, Suite N-4050
Santa Fe, NM 87505
Telephone: (505) 827-2855
Facsimile: (505) 827-1628
Email: jeff.kendall@state.nm.us

Attorneys for Plaintiff New Mexico Environment Department.

**NEW MEXICO STATE ENGINEER**

/s/ Gregory C. Ridgley
Gregory C. Ridgley*
General Counsel
Matthias L. Sayer*
Special Counsel
130 South Capitol Street
Concha Ortiz y Pino Building
P.O. Box 25102
Santa Fe, NM 57504-5102
Telephone: (505) 827-6150
Facsimile: (505) 827-3887
Email: greg.ridgley@state.nm.us
       matthiasl.sayer@state.nm.us

Attorneys for Plaintiff New Mexico State Engineer.

**\*Applications for Admission to the District of North Dakota or pro hac vice motions pending.**